## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

**ANTONINO SÁNCHEZ-BURGOS,**

      **Petitioner,**

      **v.**                                                                                   **CIVIL NO. 18-1031 (PAD)**

**JOSÉ VEGA-APONTE, <u>et. al.</u>**

      **Respondents.**

### OPINION AND ORDER

Delgado-Hernández, District Judge.

      The petitioner was sentenced for second-degree murder in 1998 and for first-degree murder and firearm violations in 1999.  On January 22, 2018, he applied *pro se* for federal habeas relief challenging the 1999 conviction pursuant to 28 U.S.C. § 2254.  On July 31, 2020, he filed through court-appointed counsel a motion to vacate both the 1998 and 1999 convictions under Section 2254. Respondents moved to dismiss.  Because petitioner did not exhaust all claims in state court; even if he had done so the petition would be untimely; and the record does not justify reliance on the narrow "miscarriage of justice" gateway that the Supreme Court has recognized for defaulted and untimely claims involving tenable assertions of actual innocence, respondents' motion is GRANTED, and the case DISMISSED.

### I.    <u>PROCEDURAL BACKGROUND</u>[1]

      In July 1997, petitioner pled guilty in the Court of First Instance of Puerto Rico ("CFI") to the second-degree murder of Mr. José Hernández-Jiménez (Docket No. 56, p. 2).  As he was on probation for firearms and controlled substance violations at the time of the event, on December 7,

---

[1] The narrative is taken from the parties' submissions.

1998, the CFI revoked probation and sentenced him to 22 years of imprisonment.  Id.  He did not

challenge the sentence on appeal.  In September 1999, he was found guilty after a jury trial in the

CFI of weapons law violations and of the first-degree murder of Mr. Osvaldo Jiménez-Vélez.  Id. at

2.  On November 23, 1999, the CFI sentenced him to 105 years of imprisonment.  Id.  On December

22, 1999, he appealed that sentence (id., at 4), which the Puerto Rico Court of Appeals ("CA")

affirmed on October 25, 2000.  Id.  He did not seek direct review of the CA's determination with the

Puerto Rico Supreme Court.  Id.

Nearly 14 years later, on October 23, 2014, petitioner filed a motion for a trial de novo as to

the 1999 conviction in the CFI under Rule 192.1 of the Puerto Rico Rules of Criminal Procedure,

P.R. Laws Ann. tit. 34, Ap. II, R. 192.1 (Docket No. 2-1, p. 2).[2]  On August 12, 2015, the CFI

conducted an evidentiary hearing (Docket No. 21-1, p. 2).   On January 11, 2016, it issued a

Resolution, notified on January 12, 2016, denying petitioner's request (Docket No. 56 p. 5).   On

January 26, 2016, petitioner moved for reconsideration (Docket No. 21-1, p. 7).  By Resolution dated

February 3, 2016, notified on February 8, 2016, the CFI turned down the reconsideration motion.

Id.  On March 9, 2016, petitioner asked the CA to issue a writ of *certiorari* to overturn the CFI's

decision (Docket No. 21-1).  On May 17, 2016, the CA affirmed the CFI.  Id.  On November 4, 2016,

the Puerto Rico Supreme Court denied a request for *certiorari* regarding the CA's ruling (Docket

---

[2] This mechanism is available to vacate, set aside or correct the judgment if the sentence was imposed in violation of
the Constitution or laws of the Commonwealth of Puerto Rico or the Constitution and laws of the United States; the
sentencing court lacked jurisdiction to impose the sentence; the sentence exceeds the penalty prescribed by law; or the
sentence is subject to collateral attack for any reason.  See, P.R. Laws Ann. tit. 34, Ap. II, R. 192.1 (so providing).  In
this way, it sets a procedure "by which any person imprisoned by virtue of a judgment may dispute the validity of such
imprisonment".  CA's Judgment (Docket No. 21-1), p. 10 (citing Pueblo v. Ortiz Couvertier, 132 D.P.R. 883, 894 (1993)).
The procedure is of a civil nature, similar to a habeas corpus petition, separate and independent from the procedure in
which judgment is contested, and one where the petitioner has the burden of proving that he is entitled to the remedy
sought.  Id. at p. 11 (citing Pueblo v. Román Mártir, 169 D.P.R. 809, 826 (2007)).  Petitioner never filed a 192.1 motion
in connection with the 1998 conviction.

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 3

No. 21-2).  On January 20, 2017, it denied a request to reconsider its previous order (Docket No. 21-3).

On January 22, 2018, petitioner filed, *pro se*, an application for habeas relief under 28 U.S.C. § 2254 in relation to the 1999 conviction (Docket No. 2-1, p. 15).  On April 5, 2018, respondents moved to dismiss (Docket No. 14).  In the meantime, petitioner requested that the court appoint counsel, which the court did (Docket Nos. 4, 19, 23, 25, 28, and 29).  In light of the appointment, the court denied respondents' motion to dismiss without prejudice of it being refiled at a later stage (Docket No. 29).  On July 31, 2020, court-appointed counsel filed on petitioner's behalf a renewed motion to vacate the 1999 sentence and, for the first time, to vacate the 1998 conviction (Docket No. 50, pp. 1-2, 22-23).[3]  On September 25, 2020, respondents moved to dismiss (Docket No. 56).

---

[3] Court-appointed counsel moved for several extensions of time to file the motion, which the court granted (Docket Nos. 30, 33, 36, 40, 42, 46, and 49).  The motion that he finally filed in July 2020 is not a "second or successive" petition subject to the strictures of 28 U.S.C. § 2244 (b), which, among other things (1) requires an order from the appropriate court of appeals directing the district court to consider the application; (2) mandates dismissal of claims presented in a prior application; and (3) provides for dismissal of claims not presented in a prior application unless (i) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or (ii) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence, and the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.  Id. at § 2244 (b)(1)–(b)(3).  The phrase "second or successive petition" is a "term of art."  Slack v. McDaniel, 529 U.S. 473, 486 (2000).  It does not simply refer to all habeas filings made "second or successively in time," following an initial application.  Magwood v. Patterson, 561 U.S. 320, 332 (2010); Richardson v. Dretke, 2004 WL 2413305, *1 (N. D. Tex. Oct. 28, 2004)(Report and Recommendation), Report and Recommendation adopted at 2004 WL 2624279, *1 (N. D. Tex. Nov. 17, 2004) ("A petition that is literally second or successive … is not necessarily a second or successive application").  If the original petition did not produce an adjudication on the merits, a later petition will not be deemed "second or successive."  Pratt v. United States, 129 F.3d 54, 60 (1st Cir. 1997).  Nor will "an amended petition, filed before the initial one but before judgment," Banister v. Davis, ---U.S.----, 140 S. Ct. 1698, 1705 (2020), or a subsequent application filed before prisoner's release for "a completely unrelated conviction *for the first time*."  Patterson, 561 U.S. at 333-334 (italics in original).  Measured by these standards, the July 2020 motion does not qualify as a "second or successive" petition.  First, the motion was filed prior to judgment on the merits, which in this sense benefits both the challenge to the 1998 conviction and the new claims raised with respect to the 1999 conviction.  Second, in April 2019 (Docket No. 30), October 2019 (Docket No. 33), January 2020 (Docket No. 40), and May 2020 (Docket No. 46), court-appointed counsel requested extensions of time to amend the 2018 petition, which the court granted.  Accordingly, in July 2020, he filed a motion to vacate the 1998 conviction for the first time and the 1999 conviction with the original and additional claims.  Like any civil litigant, a habeas petitioner is entitled to amend his petition.  See, 28 U.S.C. § 2242 ("Application for a writ of habeas corpus … may be amended or supplemented as provided in the rules of procedure applicable to civil actions").  The Civil Rule on amended pleadings, Rule 15 of the Federal Rules of Civil Procedure, instructs that "[a]n amendment of a pleading relates back to the date of the original  pleading when …

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 4

## II.      DISCUSSION

### A.  Introduction

Challenges by a state prisoner to the "fact or length" of confinement are brought by petition for a writ of habeas corpus on the authority of 28 U.S.C. § 2254. Preiser v. Rodríguez, 411 U.S. 475, 487 (1973); Ira P. Robbins, Habeas Corpus Checklists, Thomson Reuters (2019-2020 Ed.), Sec. 2.1, p. 12. To this end, Section 2254(a) provides that a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, the Rules Governing Section 2254 Cases in the United States District Courts cover cases of persons in custody under a state-court or federal-court judgment who seek a determination that future custody under a state-court judgment would violate the Constitution, laws, or treaties of the United States. See, Rule 1(a)(2). Collateral review of a conviction is not a "rerun of the direct appeal." Lee v. McCaughtry, 933 F.2d 536, 538 (7th Cir.), cert denied 502 U.S. 895 (1991). An error that may justify reversal on direct appeal "will not necessarily support a collateral attack on a final judgment." Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

---

the claim … asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). The original pleading to which Rule 15 refers is "the complaint in an ordinary civil case, and the petition in a habeas proceeding." Mayle v. Felix, 545 U.S. 644, 655 (2005). Rule 15 allows relation back only when the claims added by amendment arise from or are tied to the same core of operative facts as the initially filed claims, not when the new claims depend upon events separate in both time and type from the originally raised episodes. Id. at 657, 664. From this formulation, the claims that the July 2020 motion raised as to the 1999 conviction relate back to the 2018 petition, and as such, are considered part of a single application. At the end of the day, though, that these initial and subsequent claims do not consist of a second or successive filing is of no import, for as discussed below, they are untimely.

   B. **Exhaustion**

      The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 214

(1996) ("AEDPA") instructs that federal habeas relief "shall not be granted unless it appears that the

applicant has exhausted the remedies available in the courts of the State." Coningford v. Rhode

Island, 640 F.3d 478, 482 (1st Cir. 2011).  This requirement "embodies principles of federal-state

comity and is designed to provide state courts with an initial opportunity to pass upon and correct

alleged violations of [their] prisoners' federal rights." Barresi v. Maloney, 296 F.3d 48, 51 (1st Cir.

2002)(quoting Picard v. Connor, 404 U.S. 270, 275 (1971))(alteration in original).  For the same

reason, "a petitioner's failure to present his federal constitutional claim to the state courts is ordinarily

fatal to the prosecution of a federal habeas case." Coningford, 640 F.3d at 482.  To satisfy the

exhaustion requirement, the petitioner must present the federal claim "fairly and recognizably to the

state courts." Clemens v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007).  A claim is fairly presented

when the petitioner has tendered his federal claim in such a way as to "make it probable that a

reasonable jurist would have been alerted to the existence of the federal question." Id.

      Petitioner did not appeal or collaterally attack in the state the 1998 conviction.  For this

reason, he is precluded from doing so here.  Conversely, exhaustion was accomplished as to the 1999

conviction, but only with respect to three of the nine claims that petitioner included in the original

2018 petition as amended by the July 2020 motion, namely: actual innocence related to recantation

of a trial witness' testimony; suppression of report with potentially exculpatory evidence; and the

fact that jury foreperson's son had some sort of friendship with the victim. See, Appendix, Sections

A-F.[4]  With this, the record reflects what may properly be considered a mixed petition, that is, a

--------

[4] The Appendix lists the issues petitioner raised on direct review with the CA, collateral review with the CFI and CA, and with this court.  The 2018 filing contains one claim - actual innocence - in regard to the 1999 conviction (Docket No. 2-1, pp. 15, 22), whereas the 2020 filing contains eight claims arising from that conviction (Docket No. 50, pp.

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 6

petition with "both exhausted and unexhausted claims." Gaskins v. Duval, 640 F.3d 443, 449 (1st Cir. 2011).

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court held that a federal district court could not adjudicate mixed habeas petitions. Id. at 510. The Court reasoned that such a rule would "further [  ] the policy of comity underlying the exhaustion doctrine." Id. at 514. It expressed that requiring "total exhaustion" would "encourage state prisoners to seek full relief first from state courts, thus giving those courts the first opportunity to review all claims of constitutional error." Id. at 518-519. Moreover, it observed that federal claims that have been fully exhausted in state courts would more often "be accompanied by a complete factual record to aid the federal courts in their review." Id. at 519. And it pointed out that both courts and prisoners would benefit, for as a result, the district court would be "more likely to review all of the prisoner's claims in a single proceeding [which would provide] for a more focused and thorough review." Id. at 510, 520. At the same time, the Court gave petitioners the option of deleting the unexhausted claims or voluntarily dismissing the petition and returning to state court to fully exhaust claims. Id. Once all claims are exhausted, the petitioner may refile the petition in federal court. See, Slack v. McDaniel, 529 U.S. 473, 486 (2000)(noting that a Lundy dismissal contemplates that the prisoner could return to federal court after the requisite exhaustion).

17-22). Five of those claims deal with ineffective assistance of counsel, and the remaining claims with suppression of report with potentially exculpatory evidence; the fact that jury foreperson's son had some sort of friendship with the victim; and non-unanimous verdict. Id. Of all those claims, three were raised in state court, that is to say, actual innocence related to recantation of trial witness' testimony; suppression of a report with potentially exculpatory evidence; and the fact that jury foreperson's son had some sort of friendship with the victim. The July 2020 motion also challenged the 1998 conviction based on ineffective assistance of counsel and the government's failure to provide a sworn statement by a cooperating witness that did not mention petitioner or his involvement in the crime (Docket No. 50, pp. 14-17). None of these 1998-related claims were brought to the attention of state courts in direct or collateral review. See, Appendix, Sections A-F.

With this background, as part of the AEPDA Congress adopted a one-year statute of limitations for the filing of fully exhausted claims in a federal habeas petition but did not provide for the tolling of the limitations period while a habeas petition was pending in federal court. See, Duncan v. Walker, 533 U.S. 167, 169, 172-173, 181-182 (2001)(Congress did not intend properly filed applications for federal review to toll limitations period to exhaust state post-conviction or collateral review proceedings); Josselyn v. Dennehy, 475 F.3d 1, 4 (1st Cir. 2007)(Congress did not provide for the tolling of the limitations period while a mixed habeas petition is pending in federal court). Consequently, petitioners who come to federal court with a mixed petition ran the risk of forever losing their opportunity for any federal review of their unexhausted claims. See, Watt v. Marchilli, 217 F.Supp.3d 434, 440 (D. Mass. 2016)(so recognizing). To remedy the problem, in Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court approved a "stay and abeyance" procedure whereby rather than dismissing a mixed petition, a district court can stay the petition and hold it in abeyance while the petitioner exhausts the unexhausted claims. Id. at 271. Once all of the claims have been exhausted, the district court can lift the stay and adjudicate the perfected petition. Id. at 275-276.[5]

Nevertheless, the Supreme Court recognized that applying the "stay and abeyance" procedure too frequently could undermine Congress' intent under the AEDPA to encourage finality in criminal proceedings and to streamline the federal habeas process. Weber, 544 U.S. at 277. Thus, a court should only stay resolution of exhausted claims and hold a petition in abeyance "in limited circumstances." Id. To obtain a stay of a mixed petition, the petitioner must show that there was "good cause" for failing to exhaust the state remedies; the claims are potentially meritorious; and there is no indication that the petitioner engaged in intentionally dilatory tactics. Id. at 277-278. The

---

[5] The procedure is also available for a petition that raises only unexhausted claims. See, Watt, 217 F.Supp.3d at 440 (collecting cases).

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 8

bar is "high." <u>Watt</u> v. <u>Marchilli</u>, 217 F.Supp.3d 434, 440 (D. Mass. 2016).

Petitioner has not argued, and the record does not show good cause for the failure to exhaust the claims brought as part of the challenge to the 1998 conviction and six of the claims related to the 1999 conviction. Those claims, dealing with ineffective assistance of counsel, were known or should have been known to him. Yet, a claim for ineffective assistance of counsel alone "does not present good cause for a stay and abeyance." <u>Watt</u>, 217 F.Supp.2d at 440. Hence, there is no occasion to apply the <u>Rhines "</u>stay and abeyance" procedure and even if all claims had been exhausted, the petition would still be untimely.

**C.  <u>Timeliness</u>**

The AEDPA limitations period begins to run from the latest of four dates, two of which are relevant here. Under Section A, the period runs from the latest of the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. <u>See</u>, 28 U.S.C. § 2244(d)(1)(A). Under Section D, it runs from the date on which factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. <u>See</u>, 28 U.S.C. § 2244(d)(1)(D). The purpose of the limitations period is to "encourage prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." <u>Carey</u> v. <u>Saffold</u>, 536 U.S. 214, 226 (2002). In this way, it "promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a reasonable time." <u>Day</u> v. <u>McDonough</u>, 547 U.S. 198, 205 (2006).

Where direct review is not pursued through each level of the state courts, the judgment becomes final when the time for seeking the relevant level of appellate review expires. <u>See</u>, <u>González</u> v. <u>Thaler</u>, 565 U.S. 134, 137, 150 (2012) (addressing topic). In this manner, the period

to challenge the 1998 conviction began to run on January 6, 1999.  Given that it was only collaterally challenged here in July 2020, the challenge would be untimely.  See, Pace v. DiGuglielmo, 544 U.S. 408, 410, 419 (2005)(dismissing federal habeas petition filed 13 years after petitioner's guilty plea).  So too with the challenge to the 1999 conviction.

To repeat, on December 19, 1999, petitioner appealed the conviction to the CA, and on October 25, 2000, the CA affirmed the judgment (Docket No. 56, p. 4).  Id.  Because petitioner did not question that determination with the Puerto Rico Supreme Court (id.), the judgment became final in November 2000 (Docket No. 56, pp. 10-17).[6]  At that point, the limitations period began to run, expiring in November 2001.  Thus, the filing of the federal habeas petition 17 years later would also be untimely.  See, Hall v. Warden, Lebanon Correctional Inst., 662 F.3d 745, 747, 749, 754 (6th Cir. 2011)(dismissing habeas petition filed five days after statute of limitations had run); McCollum v. Welch, 2014 WL 546647, *3 (D. Nev. February 6, 2014)(same with petition filed eight years after expiration of limitations period).

The Rule 192.1 motion filed in 2014 would not have set the clock back to zero to overcome the untimeliness problem.  Pursuant to 28 U.S.C. § 2244(d)(2), the statute of limitations is tolled while state post-conviction or collateral review proceedings are "pending."  Lawrence v. Florida, 549 U.S. 327, 329 (2007).[7]  The exclusion of this time period "comports with principles of comity

---

[6] The one-year limitations period for petitioners who pursue direct review all the way to the United States Supreme Court, the judgment becomes final at the conclusion of direct review, when the Supreme Court "affirms a conviction on the merits or denies a petition for certiorari."  Gonzalez, 565 U.S. at 150.  For all other petitioners, the judgment becomes final at the expiration of the time for seeking such review, when the time for pursuing direct review in the Supreme Court or in state court expires.  Id.  A criminal defendant in Puerto Rico has 30 days from judgment to appeal to the Court of Appeals.  See, Rules 193 and 194 of the Puerto Rico Rules of Criminal Procedure, P.R. Laws Ann. tit. 34, App. II, R. 193 and 194.  He may seek review in the Puerto Rico Supreme Court by moving for a writ of certiorari within 30 days from entry of the Court of Appeals' judgment.  See, Rule 217 of the Puerto Rico Rules of Criminal Procedure, P.R. Laws Ann. tit. 34, App. II, R. 217.  Given that the petitioner did not seek review from the highest state court, the conviction became final when the time for seeking such review expired.

[7] In this sense, direct review "delays the start of the statute of limitations" but collateral review "tolls its running."  Lambert v. Warden, 81 Fed.Appx. 1, 3 (6th Cir. 2003).

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 10

and encourages a petitioner to first exhaust … state court remedies before seeking federal habeas

relief." Dunker v. Bissonnette, 154 F.Supp.2d 95, 101 (D. Mass. 2001).  In its application, the clock

runs between finality of the appeal "until the individual seeking review files a state motion for

conviction relief." San Martin v. McNeil, 633 F.3d 1257, 1266 (11th Cir. 2011).  Once the petitioner

files a motion for post-conviction relief in state court, the clock stops.  Id.  It resumes running when

the state courts dispose of the motion.  Id.  But an untimely petition does not operate to restore an

expired claim, for there is no period remaining to be tolled.  See, Cordle v. Guarino, 428 F.3d 46, 48

n.4 (1st Cir. 2005)(Section 2244(d)(2) cannot revive a time period that has already expired); Webster

v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000)(similar).[8]

Petitioner did not file any post-conviction motions in connection with the 1998 conviction.

As a result, no such motion can favor him in the timeliness calculus.  And although he moved for

state post-conviction relief with regard to the 1999 conviction partially exhausting claims, the one-

year limitations period had expired well before he did so.  In consequence, the petition is time-barred.

See, Cordle, 428 F.3d at 47-49 (dismissing petition where petitioner moved for new trial in state

court eight years after the conviction became final, following expiration of the AEDPA's limitations

period).  AEDPA does not give petitioners the ability to revive an expired grace period "by the simple

---

[8] See also, Decker v. Braggs, 2018 WL 4346707, *3 (W.D. Okla. Aug. 21, 2018)(Report and Recommendation), report and recommendation adopted, 2018 WL 4344467 (W.D. Okla. Sept. 11, 2018).  In Decker, petitioner's 1997 conviction became final once it was affirmed by the Court of Appeals in 1998.  In 2003, he filed a post-conviction motion, which the trial court denied that same year.  The Court of Appeals affirmed the ruling in 2004.  Then, in 2017, the petitioner filed a second application for post-conviction relief based on newly discovered evidence.  The district court held an evidentiary hearing, ultimately denying petitioner's motion on October 23, 2017.  Petitioner moved for habeas relief on May 7, 2018.  The Court concluded that the petition was time barred, given that the conviction became final in 1998.  Petitioner argued that the conviction became final after the denial of his second application for post-conviction relief, given that the district court had held an evidentiary hearing, thereby "expanding the record with the conviction no longer being final."  Id. at p. *3.  The court found no support for this construction of the AEDPA's finality provisions.  Id.  None exists.  The situation differs from that "where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review but before the defendant has first sought federal habeas relief."  Jiménez v. Quarterman, 555 U.S. 113, 121 (2004).  However, that never happened in the case *sub judice*.

expedient of filing a motion for new trial." Dunker, 154 F.Supp.2d at 103.

Still, the AEDPA's statute of limitations "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010).[9]  A habeas petitioner seeking equitable tolling bears the burden of showing that: (1) he has been pursuing his rights diligently; and (2) some extraordinary circumstance stood in his way and prevented timely filing. Id. at 650.  To preserve the usefulness of statutes of limitations as rules of law, however, "equitable tolling should be invoked only sparingly."  Neverson v. Farquharson, 366 F.3d 32, 42 (1st Cir. 2004).  This is so particularly in the habeas context, where care is required to avoid upsetting the strong concern for finality embodied in Section 2254.  Id.  By these principles, petitioner is not entitled to equitable tolling.

First, the 2018 and 2020 motions to vacate convictions are silent on this issue.  They do not discuss how petitioner was diligent in pursuing the claims he has brought before this court, and do not identify circumstances, much less extraordinary circumstances justifying the 22-year delay in moving to vacate the 1998 conviction and the 19-year delay in the case of the 1999 conviction. See, McCollum, 2014 WL 546647 at *3 (dismissing petition in absence of arguments or evidence explaining eight-year delay).[10]

Second, in reference to the 1998 conviction, in 2020 petitioner filed materials dating back to 1997, 1998 and 1999.  See, Docket No. 50-12 (Informe Policía de Puerto Rico, dated August 1997); Docket No. 50-3 ("Investigación a Lic. José M. Cruz Ellis Progreso # 95 Aguadilla, P.R.,"

---

[9] For the same reason, the one-year period "is not jurisdictional."  Trapp v. Spencer, 479 F.3d 53, 59 (1st Cir. 2007).

[10] Petitioner complains that when his attorney in the 1999 murder case notified him of the CA's decision three months after it was issued, the term to reconsider or seek review in the Puerto Rico Supreme Court had expired (Docket No. 56, p. 14).  Even so, petitioner did nothing until he filed the Rule 192.1 motion for trial de novo fifteen years later, and at that time did not invoke counsel's performance as ground for relief.  See, Appendix, Sec. B.

dated July 24, 1998);[11] Docket No. 50-4 ("Declaración Jurada de Hermes Salcedo Peña," dated January 27, 1998); Docket No. 50-5 ("Report of Investigation," dated April 7, 1998); Docket No. 50-6 ("Moción," dated February 2, 1999); Docket No. 50-7 (Letter to "Colegio de Abogados de P.R. Comisión de Ética," dated September 10, 1999); and Docket No. 50-2 (a sworn statement from a purported alibi witness, dated August 27, 2014).  As to the 1999 conviction, in 2020 he submitted two police reports prepared in 1995 (Docket Nos. 50-8 and 50-9), one sworn statement from the son of the president of the jury, to the effect that he was a friend of the victim, dated June 5, 2014 (Docket No. 50-13) and one sworn statement from the president of the jury, to the effect that during deliberations it was mentioned that petitioner had a prior murder conviction, dated June 5, 2020 (Docket No. 50-10).[12]  And yet, he never described which of those documents were in his possession by the date of the convictions, and as to the remaining documents, what efforts, if any, he employed to discover them before moving for collateral relief.

In these circumstances, equitable tolling does not excuse the late filing.  See, Pace, 544 U.S. at 410, 419 (federal habeas petition untimely where petitioner waited over four years without

---

[11] Mr. Cruz Ellis was petitioner's record counsel in the case culminating in the 1998 conviction.

[12] All of these documents are in the Spanish language except the 1998 report of investigation (Docket No. 50-5) and the 2014 sworn statement, which, albeit in Spanish, is accompanied by an English language translation (Docket Nos. 50-1 and 50-2).  The court cannot consider the Spanish-language documents.  Pursuant to 48 U.S.C. § 864, "[a]ll pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."  To the same end, Local Civil Rule 5(c) provides that all documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English provided the translation was prepared by (1) an interpreter certified by the Administrative Office of the U.S. Courts; (2) a translator who has approved Phase I (written legal translation) of the Federal Court Interpreters Certification Examination; or (3) a translator certified by the American Translator Association or who has a post-graduate degree from an accredited postgraduate education translation program.  A certified translation is not necessary if the translation is otherwise stipulated as accurate by all parties.  But for the 2014 sworn statement, the Spanish language documents do not satisfy these criteria.  And the First Circuit requires strict enforcement with the English-language requirement "where the untranslated Spanish language document or matter is key to the outcome of the proceedings."  Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008).  Thus, district courts should not consider such documents.  See, González-De-Blasini v. Family Department, 377 F.3d 81, 89 (1st Cir. 2004)(district court should not have considered Spanish language documents).

any valid justification to assert claims in state post-conviction petition); Guarino, 428 F.3d at 49 (same, for petitioner did not present any evidence tending to show that he was diligent in only filing motion for new trial eight years after the conviction became final); Decker, 2018 WL 4346707 at *4-*5 (rejecting petition on account of unexcused 18-year delay).[13]

### D. **Miscarriage of Justice**

Miscarriage of justice opens a gateway for a federal court to review the merits of otherwise untimely or defaulted claims if the petitioner presents new, reliable evidence supporting a tenable claim of actual innocence. See, McQuiggin v. Perkins, 569 U.S. 383, 386 (2013)(discussing topic). Explicitly tying the miscarriage of justice exception to actual innocence "accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the extraordinary case" where the exception is put to effect. Schlup v. Delo, 513 U.S. 298, 322 (1995).

The gateway "applies to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." McQuiggin, 569 U.S. at 394-395. It does not operate in a vacuum, divorced from state proceedings. To determine whether an assertion of actual innocence is tenable, a federal court sitting in habeas must accord deference to the state court's factual findings, which are presumed correct and may only be rebutted by "clear and convincing evidence." Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Coombs v. State of Maine, 202 F.3d 14, 18 (1st Cir. 2000) (discussing topic).[14]

---

[13] See also, Keeling v. Warden, 673 F.3d 452, 462-463 (6th Cir. 2012)(equitable tolling not warranted in light of unexcused three-year delay); Neverson, 366 F.3d at 32 (three years of unexplained delay).

[14] The presumption of correctness is equally applicable "when a state appellate court, as opposed to a state trial court, makes the findings of fact." Sleeper v. Spencer, 510 F. 3d 32, 38 (1st Cir. 2007).

The presumption of correctness applies to a finding that a recanting witness is not credible. See, Kinsel v. Cain, 647 F.3d 265, 270 (5th Cir. 2011)(presuming correct state court's finding that witness' recantation lacked credibility); Richardson v. Lord, 7 Fed.Appx. 1 (2d Cir. 2001) (presuming correct state court's factual determination that recantation and supporting affidavits were not credible).  To conduct this assessment, the court "may consider how the timing" of an actual innocence claim "bear[s] on the probable reliability" of the claim.  McQuiggin, 569 U.S. at 399.  In this manner, while untimeliness is not an "unyielding ground for dismissal of a petition," it touches "on the credibility of evidence proffered to show actual innocence."  Id. at 401.  The standard is "demanding" (id., p. 386), seldom met (id.), and is not met here.

### 1. **1998 Conviction**

Petitioner has not formally raised an actual innocence claim related to the 1998 conviction rather than claims of defective legal work or ineffective assistance of counsel.  However, he submitted a sworn statement from one Ismael Serrano, dated August 27, 2014, to the effect that petitioner's counsel contacted him to serve as a witness for an alibi defense that counsel would be presenting in the case (Docket No. 50-2, ¶ 3); in 1995, the affiant was accused and convicted in the Aguadilla Court for violations to the Controlled Substances Law and sentenced to eight-years of probation (id., ¶ 4); prior to testifying about the alibi in petitioner's case, the social worker from the Community Office of the [Puerto Rico] Department of Corrections assigned to his case warned him in the presence of the prosecutor in charge of petitioner's case and of the affiant's counsel, that if he testified in petitioner's case, she would revoke his probation and order imprisonment (id., ¶ 6), and for that reason he decided not to testify in petitioner's favor.  Id. at ¶ 7.  The affiant does not explain why he waited sixteen years (i.e. from 1998 to 2014) to come out with this version, particularly when he would have completed parole in 2003 (i.e. 1995 + 8).  And petitioner is silent

as to why he waited 22 years (*i.e.* from 1998 to 2020) to complain about this.  That being so, he cannot invoke miscarriage of justice as a gateway for review of the 1998 conviction.  See, Milton v. Secretary, Department of Corrections, 347 Fed.Appx. 528, 531 (11th Cir. 2009)(dismissing habeas petition based on affidavits whose credibility is called into question because they were presented more than ten years after the murder and roughly eight years after petitioner's trial without a reasonable explanation for the delay).

### 2.  1999 Conviction

The actual innocence claim as to the 1999 conviction is essentially grounded on a witness'- Angel Manuel Díaz Ortiz' -recanting his trial testimony, that petitioner was one of the two people who shot the victim.  The CFI thoroughly considered the witness' recantation, concluded that it lacked sufficient elements of trustworthiness, and denied relief (Docket No. 21-1, pp. 1, 19).  The CA affirmed the CFI's determination.  Id. at p. 1.  The lack-of-credibility finding rests on sound premises.

Mr. Díaz testified in the probable-cause-for arrest hearing under Rule 6 of the Puerto  Rico Rules of Criminal Procedure; the probable-cause to indict hearing under Rule 23 of the Puerto Rico Rules of Criminal Procedure; and at trial, giving a consistent version of the facts, and despite having been cross examined, providing testimony sufficient to take the case to the next stage, including trial, where a jury found his testimony credible and the petitioner guilty beyond a reasonable doubt (Docket No. 21-1, p. 4).[15]  The recantation occurred roughly 15 years after the

---

[15] Within the framework of the Rules of Criminal Procedure of Puerto Rico, P.R. Laws Ann. tit. 34, App. II, a felony prosecution may be broadly divided into five basic phases: (1) criminal complaint ("denuncia") and initial hearing before a magistrate to determine if probable cause exists to arrest (Rule 6); (2) in the event probable cause is found under Rule 6, preliminary hearing before a magistrate to determine if there is probable cause to indict (Rule 23); (3) should probable cause to indict be found, return of indictment ("presentación de acusación") (Rule 24); (4) arraignment ("lectura de acusación")(Rule 52); and (5) trial (Rule 111).  See, United States v. Rentas-Felix, 235 F. Supp.3d 366, 383 (D.P.R. 2017)(describing procedural framework).  Mr. Díaz testified in the initial (Rule 6) hearing, the preliminary (Rule 23) hearing, and trial.

<u>Sánchez-Burgos</u> v. <u>Vega-Aponte, et. al.</u>
18-1031 (PAD)
Opinion and Order
Page 16

incriminating trial testimony.

During the March 2015 hearing in the CFI, the witness said that it was not easy to live with a lie and wanted to get this off his chest.  <u>Id.</u> at pp. 16-17.  Furthermore, he expressed that everything he said at trial was the result of coercion on the part of the prosecutor and the investigating officer in the case, who allegedly told him that if he refused to give a statement as they wanted, they would file charges against the witness and the witness' brother for several offenses.  <u>Id.</u> at p. 4, ¶ 8, p. 17.  Otherwise, they would eliminate cases against him and pay the witness to move to another town.  <u>Id.</u> at p. 17.  In 2001 the witness travelled to the United States, and now lives in New York.  <u>Id.</u> at pp. 17-18.  He first recanted to petitioner's counsel in a meeting the two of them had in Manhattan, were counsel went to meet with the witness, and repeated the new version in the 2015 hearing.  <u>Id.</u> at pp.  17-18.

Recantation testimony is viewed with suspicion and "considerable skepticism."  <u>United States</u> v. <u>DiCarlo</u>, 575 F.2d 952, 961 (1st Cir. 1978); <u>Bough</u> v. <u>Hampton</u>, 2019 WL 4017414, *3 (6th Cir. 2019)(recantation testimony regarded with "extreme suspicion").  More so, where it takes place years after the original testimony and there is no satisfactory explanation for the delay.  <u>See</u>, <u>Herrera</u> v. <u>Collings</u>, 506 U.S. 390, 423 (1993)(characterizing as suspect, affidavits produced "at the 11th hour with no reasonable explanation for the nearly decade-long delay"); <u>Bough</u>, 2019 WL 4017414 at *1, *3 (turning down affidavit submitted 14 years after conviction without explanation for the delay); <u>Bough</u> v. <u>Settles</u>, 2019 WL 430906, *3-*4 (E.D. Tenn. Feb. 4, 2019)(rejecting recantation testimony presented four years after conviction with no explanation for the delay in coming forward with the new allegations)(citing <u>Freeman</u> v. <u>Trombley</u>, 483 Fed.Appx. 51, 61-64 (6th Cir. 2012)(recantation evidence presented ten years after the witness first testified under oath, insufficient to support gateway innocence claim in absence of explanation for the delay));

Strayhorn v. Booker, 718 F.Supp.2d 846, 874 (E.D. Mich. 2010)(same as to recantation affidavit submitted nearly two years after trial).[16]

Here, there is no explanation for why, if as the recanting witness suggested, he felt bad for having allegedly lied at trial, he did not come forward with the new version on his own years earlier instead of waiting fifteen years to do so.  Similarly, at no time did he previously report that the prosecutor or law enforcement officers allegedly coerced him into testifying against the petitioner. This, despite multiple court proceedings culminating in the conviction.  In the same direction, the witness never explained why he decided to implicate the prosecutor and police officers with acts of coercion only fifteen years after the event.  The presumption of correctness stands unrebutted. Petitioner's claim of actual innocence is not supported by new, reliable evidence sufficient to support a finding of actual innocence as a gateway for review of the 1999 conviction.

## III.    CONCLUSION

For the reasons stated, petitioner's application for relief under 28 U.S.C. § 2254 is DENIED, and the case is DISMISSED.  Judgment shall be entered accordingly.

## E.  CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing § 2254 Proceedings provides that a "district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the applicant."  Because "reasonable jurists" could not "debate whether … the petition should have been resolved in a different manner," Slack v. McDaniel, 529 U.S. 473, 484 (2000), based on the circumstances described above, the court will not issue a COA.  The lack of complete exhaustion;

---

[16] See also, Lewis v. Smith, 100 Fed.Appx. 351, 355 (6th Cir. 2004)(proper for court to have rejected as suspicious a witness' recanting affidavit made two years after petitioner's trial); Bates v. Metrish, 2010 WL 1286413, *11 (E.D. Mich. Mar. 30, 2010)(rejecting affidavit in case where recanting witness waited ten years after trial to indicate that he was willing to recant trial testimony and 16 years after trial to execute affidavit).

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 18

the considerable tardiness of the petition; the petitioner's failure to explain these problems; and

the lack of tenable evidence to support a finding of actual innocence permit "no disposition besides

dismissal." Roberts v. Medeiros, 2015 WL 1883935, *4 n.6 (D. Mass. April 24, 2015).  Petitioner

may still seek a certificate directly from the First Circuit in conformity with Rule 22(b)(1) of the

Federal Rule of Appellate Procedure.

      **SO ORDERED.**

In San Juan, Puerto Rico, this 27th day of April, 2021.

                    s/Pedro A. Delgado-Hernández
                    PEDRO A. DELGADO-HERNÁNDEZ
                    U.S. DISTRICT JUDGE

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 19

# APPENDIX

## A.  ARGUMENTS ON DIRECT REVIEW OF 1999 CONVICTION: YEAR 2000[17]

1. Prosecution did not prove the petitioner's guilt beyond a reasonable doubt.

2. Court of First Instance did not allow evidence offered pursuant to Rules 11 and 12 of the Puerto Rico Rules of Evidence.[18]

3. Court of First Instance did not allow evidence offered pursuant to Rules 11 and 12 of the Puerto Rico Rules of Evidence that established, via documents, that the prosecution's main witness had a murder charge and several controlled substance and domestic charges shelved in exchange for his testimony.

4. Court of First Instance did not allow defense counsel to impeach the prosecution's main witness on motive and interest, due to several shelved criminal charges against him in exchange for his testimony.

5. Court of First Instance did not allow the prosecution's main witness to be impeached via documents establishing that the witness had been granted immunity to testify.

6. [Court of First Instance or jury erred in] not considering discrepancies between the material evidence presented in the case and the testimony of the prosecution's main witness.

7. [Court of First Instance or jury erred in] not considering irreconcilable differences between the expert's witness evidence and the prosecution's witness.

8. [Court of First Instance or jury erred in] not considering substantial discrepancies between testimony of investigating officers, the police reports that they prepared, material evidence admitted, and photographs allowed.

---

[17] The points petitioner raised on direct review appear on respondent's motion to dismiss petitioner's July 2020 motion to vacate convictions (Docket No. 56), at p. 24.  Petitioner did not dispute the accuracy of the list.  Neither party provided any summary or detail of the arguments listed therein.

[18] The Puerto Rico Rules of Evidence in effect at the time of trial were the Rules of Evidence of 1979, P.R. Laws Ann. tit. 34, App. IV.  New rules were adopted in 2009.  Id. at Appendix VI.  Rule 11 of the 1979 Rules addressed judicial notice of adjudicative facts, whereas Rule 12 addressed judicial notice of questions of law.  See, P.R. Laws Ann. tit. 34, App. IV, R. 11 and 12.  Because neither party provided a summary of the arguments for which these rules were invoked, the court cannot say what specifically the petitioner argued in mentioning Rules 11 and 12.

B.  **STATE COLLATERAL REVIEW OF 1999 CONVICTION: YEAR 2014**[19]

1.  Main witness recanted his trial testimony.

2.  Son of the jury foreman had some sort of friendship with the victim.

3.  In 1995, a police officer interrogated a third party because he owned a vehicle that was allegedly associated with the facts of the case but the police report was not discovered during trial, which represented a violation of due process that prevented petitioner from having a fair trial.

C.  **APPEAL OF TRIAL COURT'S COLLATERAL REVIEW DECISION REGARDING 1999 CONVICTION: YEAR 2016**[20]

1.  Court of First Instance erred in not giving credence to the (recanted) testimony of Angel M. Díaz Ortiz pursuant to conclusions that do not conform to current legal rules.

2.  Court of First Instance erred in failing to take into consideration that recantation of trial witness is valid because it corroborates why scientific evidence and the original version are completely incompatible.

3.  Court of First Instance erred in applying wrong standard of proof in concluding that prosecution suppressed a police report that contained, at least, potentially exculpatory evidence about the arrest of another person for the same events that the petitioner is accused of.

4.  Court of First Instance erred in concluding that petitioner had a fair and impartial trial despite the fact that the jury foreperson's son was a friend of the victim in the case against the petitioner.

5.   Court of First Instance erred and abused its discretion when it denied the request to transfer the discussion and resolution of the motion for trial de novo filed by the petitioner, denying his right to a fair and impartial trial.

D.  **COURT OF APPEALS'S DECISION: YEAR 2016**

1.  The Court of Appeals sustained Court of First Instance's finding that witness' new version is unreliable, lacks sufficient elements of trustworthiness, and does not constitute sufficient grounds to order trial de novo (Docket No. 21-1, pp.18-19.

---

[19] Taken from the CA's Judgment reviewing the CFI's decision regarding petitioner's Rule 192.1 motion (Docket No. 21-1), at pp. 1-2.

[20] Taken from the CA's Judgment reviewing the CFI's decision regarding petitioner's Rule 192.1 motion (Docket No. 21-1), at p. 7.

Sánchez-Burgos v. Vega-Aponte, et. al.
18-1031 (PAD)
Opinion and Order
Page 21

2. Contrary to what petitioner alleges, Court of First Instance considered narrative statement of evidence used in the previous process; and petitioner's explanatory memorandum with a summary of testimonies given during the trial, and there is no reason to conclude that Court of First Instance failed to consider the evidence presented in the original trial (Docket No. 21-1, pp. 20-21).

3. Police report is not relevant to issues of guilt and punishment; does not qualify as exculpatory evidence; and is not evidence that could have led to a different verdict or make the petitioner's guilt less likely (Docket No. 21-1, pp. 13-18).

4. Jury foreperson did not know of the victim's relationship with his son when he was selected to sit on the jury; did not know the victim; and did not discuss the case at home.  Hence, petitioner did not present any evidence that would sustain his argument that foreperson's impartiality as a member of the jury was affected by the alleged relationship between his son and the deceased (Docket No. 21-1, pp. 24-26).

5. Court of First Instance did not err in not transferring case, as the transfer request was based on the fact that the prosecutor in the case is now a judge in the Aguadilla Region where the motion for new trial was being heard, and petitioner provided no facts to prove the need to transfer the case.

## E.  SECTION 2254 PETITION-1999 CONVICTION: YEAR 2018

1. Petitioner did not commit the crimes he was charged with, having been convicted solely based on perjured testimony (Docket No. 2-1, pp. 15-16).

## 2.  MOTION TO VACATE 1999 CONVICTION: YEAR 2020

1. Petitioner's trial counsel did not visit petitioner to discuss the case nor review discovery with him (Docket No. 50, p. 17).

2. Petitioner's trial counsel failed to investigate and present witnesses in favor of petitioner (Docket No. 50, p. 17).

3. Petitioner's trial counsel failed to investigate and put forth evidence to impeach witness (Docket No. 50, p. 19).

4. Petitioner's trial counsel failed to notify the court that the jury foreperson's son knew the deceased and could therefore have been biased (Docket No. 50, p. 20).

5. Petitioner's trial counsel failed to notify petitioner on the denial of the appeal and let lapse jurisdictional deadlines (Docket No. 50, p. 21).

<u>Sánchez-Burgos</u> v. <u>Vega-Aponte, et. al.</u>
18-1031 (PAD)
Opinion and Order
Page 22

6.  Verdict was 10-2, in Ramos v. Louisiana the Supreme Court held that non-unanimous verdicts are unconstitutional and although it will determine in Edwards v. Vannoy whether the ruling will be retroactive, petitioner's trial counsel was ineffective in not studying the issue and raising it at trial or appellate phases as other attorneys in Puerto Rico have done (Docket No. 50, p. 21).

7.  The jury improperly considered during deliberations the petitioner's first, unrelated conviction, as confirmed by a statement the jury foreperson signed on June 5, 2020 (Docket No. 50, p. 10).

8.  Government did not hand over a police report regarding a gray automobile which was used in the victim's murder, for which vehicle's owner was detained and questioned three days after the murder but never formally prosecuted (Docket No. 50, p. 20).